IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY E. COX, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv124-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
|    Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Mary Cox ("Cox"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Cox then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Cox was 34 years old at the time of the hearing before the ALJ. (R. 193.) She is a high school graduate and completed one year of college. (*Id.*; Doc. No. 19, p. 2) Cox's prior work experience includes working as a photographer, fast-food service worker, nursery

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

worker, security guard, cashier, truck driver, and landscaper.[4] (R. 71, 95.) Cox alleges that she became disabled due to bipolar disorder Type II, generalized anxiety disorder, and post-traumatic stress disorder.[5] (Doc. No. 18, p. 1.) The ALJ found that Cox's personality disorder and depressive disorder were severe impairments. (R. 18.) Next, the ALJ determined that Cox was not able to perform her past relevant work. (R. 19.) Based on the testimony of the vocational expert, the ALJ concluded that there were significant jobs in the national economy that Cox could perform, such as a housekeeper, kitchen helper, and laundry worker. (R. 20) Accordingly, the ALJ concluded that Cox was not disabled. (*Id.*)

## IV. The Plaintiff's Claims

As stated by Cox, she presents the following issues for the court's review:

(1) She does have a medically documented listing level impairment which meets or exceeds the listings found in Appendix 1 to Subpart P of § 20 CFR 404, at 12.04 and 12.06.

(2) The ALJ erred in holding that Mary's testimony was "inconsistent with the weight of the medical evidence" and was not "wholly credible."

(3) The ALJ erred in basing his decision largely upon the opinion of SCAMHB staff psychiatrist Josue Becerra, who was not a treating source as defined in the Rules at the time of the opinion.

(4) The ALJ erred in discounting the records and opinions of the

---

[4] Cox also alleges, and the Government does not dispute, that she worked as a cleaner or housekeeper for Carter Rental Properties and Genesis Eldercare Management Services and as a laundry worker for Benton's Professional Cleaners. (Doc. No. 18, Pl's Brief, p. 12; Transcript, R. 54, 56-57.)

[5] Cox alleges that she became disabled on July 7, 2003. (R. 50.) The record indicates that Cox was insured for disability benefits through September 30, 2005. (R. 16.) Consequently, the ALJ considered whether Cox's alleged disability occurred on or before September 30, 2005. (*Id.*)

>
> plaintiff's case manager and therapist, Reggie Walker.
>
> (5) The ALJ erred in basing his decision on the vocational expert's hypothetical opinion that there are a significant number of jobs existing in the national economy that the claimant could perform, while also holding that the plaintiff could not perform them.
>
> (6) The Commissioner erred in failing to review the decision of the ALJ based on the additional evidence submitted.

(Doc. No. 18, Pl's Brief, pp. 4-5.)

## V. Discussion

Cox raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Cox's specific arguments because the court concludes that the ALJ erred as a matter of law, and thus, this case is due to be remanded for further proceedings. Specifically, the court finds that the ALJ failed to conduct a proper credibility determination, failed to adequately develop the record regarding the effect Cox's medications have on her ability to work and her work history, and failed to resolve conflicts in the evidence.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 D.2d 1529, 1532 (11th Cir. 1991)(articulated reasons must be based on

substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

A lack of sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote v. Chater*, 67 F.3d at 1562, *quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

While the ALJ found that Cox's testimony concerning her psychological limitations was not credible, he failed to articulate specific and adequate reasons for doing so. When discussing Cox's credibility, the ALJ found as follows:

> The claimant testified at the hearing that she is unable to work because she "gets upset," particularly in her dealings with other people or in handling stress. She related that she lives with her father and that she stays in the house and often does not get dressed. She stated that she does not drive and that she avoids crowds.
>
> The undersigned finds that the testimony of the claimant, particularly as it related to alleged psychological symptoms and limitations, was inconsistent with the weight of the medical evidence, was not wholly credible and therefore failed to support a finding of disability. Specifically, the undersigned notes that the medical evidence of record showed that the claimant's mental disorders were well controlled with the use of medication.

> The undersigned has evaluated all the claimant's symptoms, in accordance with the provisions of 20 CFR §§ 404.1529 and 416.929 and Social Security Rulings (SSR) 96-3p, 96-4p and 96-7p. In accordance with the provisions of these authorities, once the medical signs or laboratory findings show that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the Administrative Law Judge must evaluate the alleged intensity and persistence of the claimant's symptoms by considering all the available evidence. The undersigned has not required the presence of objective medical evidence in determining the intensity and persistence of the symptoms alleged. Rather, the undersigned has specifically considered the nature, onset, duration, frequency, and intensity of any symptom; the precipitating and aggravating factors; the type, dosage, effectiveness and adverse side effects of any medication; the treatment, other than medication, for relief of symptoms; the alleged functional restrictions; and the claimant's daily activities. As discussed previously, although the evidence showed that the claimant has medically determinable impairments that could reasonably be expected to produce some of the symptoms alleged, the evidence did not support the claimant's allegations of the intensity and persistence of such symptoms.

(R. 18-19.)

The only specific inconsistency between Cox's testimony and the medical evidence identified by the ALJ concerns whether her mental disorder is well controlled. Medical records indicate that Cox suffers from bipolar personality disorder II, with depressive symptoms, and a generalized anxiety disorder and that she has taken Lithium and other medications since she was thirteen years old. (R. 138-39, 145.) A review of the records indicate that, although Cox's prescribed medications have improved her condition, the medication has not completely controlled her symptoms. For instance, in February 2005, Cox presented to the South Central Alabama Mental Health Clinic, requesting treatment for

7

bipolar disorder.[6]  (R. 146.)  Shortly thereafter, Dr. Audrey S. Hall, a staff psychiatrist, diagnosed Cox as suffering from "bipolar personality disorder II, depressive, [and] generalized anxiety disorder." (R. 159.)  During Cox's treatment at the clinic, both Dr. Hall and Dr. Sharon Brown, another staff psychiatrist, recommended that Cox participate in several outpatient services, including individual therapy, medication monitoring, physician assessments, and mental health consultations.[7]  (R. 138, 159.)  On October 24, 2005, Cox presented to Reggie Walker, a licensed professional counselor, with complaints of sleep difficulties, elevated anxiety, mood swings, and racing thoughts.[8]  (R. 140.) Walker noted that Cox was anxious, dysphoric, and restless.  (R. 188.)

On November 17, 2005, Dr. Jose Becerra, a staff psychiatrist, determined that Cox

---

[6] Medical records indicate that Cox moved from Maryland to Alabama in July 2004.

[7] South Central Alabama Mental Health records from Reggie Walker and Dr. Jose Becerra dated between October 24, 2005, through July 25, 2006, were not provided to the ALJ.  (R. 174-88.)  However, these documents were provided to, and considered by, the Appeals Council. (R. 4.)  Consequently, this court will consider the treatment notes from Mr. Walker and Dr. Becerra when determining whether the Commissioner erred in denying benefits.  *See Ingram v. Astrue*, ___ F.3d ___, 2007 WL 2385076, at *6 (11th Cir. Aug. 23, 2007).

[8] This court recognizes that the general rule is that a licensed professional counselor is not an "acceptable medical source" under 20 C.F.R. § 416.927(a)(2). *See Johnson v. Apfel*, Case No. CIV. A. 98-0674-AH-G, 2000 WL 208741 at *3 (S.D. Ala. Feb. 17, 2000).  Nonetheless, a counselor may be considered a "medical source" under 20 C.F.R. § 404.1513(d).  For example, in *Miles v. Barnhart*, 410 F.Supp.2d 1113 (N.D. Ala. 2006), a therapist who treated a claimant suffering from depression, anxiety disorder, and panic disorder was qualified to testify as a "medical source" under 20 C.F.R § 404.1513 (d)(1) regarding the severity of claimant's condition and its effect on her ability to work, where the claimant was referred to a therapist by a physician after diagnosis. Additionally, in *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), the court held that when a medically determinable impairment is found by an acceptable medical source, evidence from "other sources" may be used to show the severity of the impairment and how it affects a claimant's ability to work.  In the present case, the medical records clearly demonstrate that a psychiatrist diagnosed Cox as suffering from bipolar personality disorder II and generalized anxiety disorder, and recommended that she participate in individual therapy sessions with Walker.  Consequently, this court considers Cox's counselor to be a "medical source" under 20 C.F.R. § 404.1513.

8

was "stable" and renewed her prescriptions for 300 milligrams of Lithium to be taken three times a day and 10 milligrams of Valium to be taken twice a day. (R.131-32.) However, during counseling sessions on November 28, 2005, January 11, 2006, and January 19, 2006, Walker again noted that Cox was anxious and dysphoric and that her sleep was poor. (R. 185-87.) On January 19, 2006, Walker also indicated that Cox appeared restless. (R. 185.) After another counseling session on January 26, 2006, Walker concluded that Cox's mood had improved and that she appeared calm, but that her progress was minimal. (R. 184.) During a counseling session the following week, Walker noted that Cox was dysphoric. (R. 183.)

On March 9, 2006, Dr. Becerra examined Cox and found her to be "asymptomatic"; the psychiatrist, however, also noted that Cox's progress toward her treatment goals was "fair" and renewed her prescriptions for Lithium and Valium. (R. 130-31.) After another counseling session on March 23, 2006, Walker indicated that Cox's mood was anxious and dysphoric, that her affect was dull and inappropriate, and that she was "very nervous" and appeared to be in an "anxiety state." (R. 182.) On May 23, 2006, Walker indicated that Cox was anxious and dysphoric and that she reported having mood swings and thoughts of suicide. (R. 181.) Walker also indicated that Cox's prescription for 300 milligrams of Lithium three times a day "may not be as effective." (R. 181.) On June 13, 2006, Walker noted that Cox was not sleeping, that her mood was anxious and dysphoric, and that she requested a change in her prescription. (R. 180.)

On June 15, 2006, Dr. Becerra noted that Cox appeared depressed and tearful, that she

9

reported suffering from mood swings, and that she "does not like getting dressed [except] when [she] comes . . . to see therapist." (R. 179.) Dr. Becerra discontinued Cox's prescription for Valium, renewed her prescription for Lithium, and prescribed Flouxetine. (R. 179.) On June 22, 2006, Dr. Becerra noted that Cox "feels more angry than usual" and prescribed 600 milligrams of Lithium twice a day, 10 milligrams of Flouxetine once in the morning, and one milligram of Clonazepam per every hour of sleep. (R. 178.) During another counseling session on June 28, 2006, Walker noted that Cox's mood was anxious and dysphoric, that Cox was angry, and that she reported "mood swings – continue to have moods of up and down." (R. 177.) In addition, the counselor indicated that Cox's sleep was "fair to poor." (*Id*.) On July 11, 2006, Walker noted that Cox's mood was anxious and dysphoric and that she was hearing voices. (176.) Walker also noted that Cox has "problems with social environment – needs someone with her." (*Id*.)

On July 20, 2006, Dr. Becerra indicated that Cox's affect was depressed and that Cox reported that she was "still going up and down . . . still not sleeping . . . Prozac makes [her] get up and move around but [she was] still depressed" and that Clonazepam was not helping her sleep. (R. 175.) Dr. Becerra discontinued Cox's prescription for Clonazepam and renewed her prescriptions for Lithium and Flouxetine. (*Id*.)

On July 25, 2006, Walker noted that Cox's mood was dysphoric and irritable and that she reported "still feel[ing] on edge." (R. 174.) The medical records also demonstrate that, during each consultation with Cox, Walker noted that Cox's progress was minimal. (R. 174-77, 180-82, 185-88.) In short, the medical records demonstrate that Cox's mental

10

impairments were not consistently "well controlled" by her prescribed medications.

The court's difficulty with the ALJ's assessment of Cox's credibility is that the ALJ never points to substantial evidence directly contradicting Cox's claims.[9] Although the ALJ detailed some of Cox's complaints and parts of the medical records, nothing in his analysis clearly indicates that he evaluated Cox's credibility in accordance with the law of this Circuit which requires specific reference to well supported reasons. The level of generality of the ALJ's discussion is insufficient. Absent a proper credibility determination, this court cannot determine if the ALJ's decision is based on substantial evidence.

Next, the court questions whether the Commissioner properly considered whether Cox suffered any side effects from her prescribed medications. In his analysis, the ALJ merely states that he considered the "type, dosage, effectiveness and adverse side effects of any medication" (R. 19); the ALJ, however, failed to consider how the medications may combine to affect Cox's ability to work. Moreover, the ALJ failed to discuss inconsistencies in the evidence. Although medical personnel frequently noted that Cox suffered no side effects from her medication, the record indicates that Cox reported sleeping difficulties, clumsiness, weight gain, anxiety, and shaking.[10] (R. 67, 117, 133, 136, 145, 157, 174-77, 180-82, 185-88,

---

[9] The Government places great reliance on Cox's GAF scores as support for their argument that the Commissioner's decision is supported by substantial evidence. This court notes that a GAF score is "not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition." *Jiles v. Comm'r of Social Security*, No. Civ. A. 05-G-0861-S, 2006 WL 4402937, * 2 n. 1 (N.D. Ala. Sept. 11, 2006).

[10] Adverse reactions to Lithium may include tremors, twitching, restlessness, excessive weight gain, headaches, and fatigue. Physicians' Desk Reference, 61st ed. (2007) at p. 1693. In addition, Valium may cause ataxia, drowsiness, fatigue, headaches, tremors, anxiety, increased muscle spasticity, insomnia, and sleep disturbances. *Id.*, at p. 2819.

208.)  In light of this evidence, the court concludes that the Commissioner failed to adequately develop the record regarding the effect of Cox's medications on her ability to work.  It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability.  *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).  On remand, the ALJ should consider all of the effects of Cox's medications on her ability to perform work.

The ALJ also failed to resolve inconsistencies with respect to Cox's ability to perform other jobs existing in the national economy.  At Step Four, the ALJ found that Cox cannot perform any of her past relevant work and that she has no transferable skills.  (R. 19.)  However, at Step Five, the ALJ concluded that Cox could perform other jobs existing in significant numbers in the national economy, relying in part on the vocational expert's opinion that Cox could perform work as a housekeeper, kitchen helper, and laundry worker.  (R. 20.)  The ALJ's conclusion, however, is inconsistent with the evidentiary materials.  For instance, in Cox's work history report, Cox recalled working six prior jobs, including work as a food service worker, and stated that she could "not remember all the jobs [she] worked or when."  (R. 71.)  An earnings record also indicates that, since 1990, Cox has held over 35 different jobs, including working at Benton's Professional Cleaners, Carter Rental Properties, and Genesis Eldercare Management Services, Inc.[11] (R. 54, 56-57.)  Although the earnings report does not identify the specific jobs held by Cox at each business, the printout clearly

---

[11] In her brief, Cox asseverates that she worked as a cleaner/housekeeper for Carter Rental Properties and Genesis Eldercare Management Services, as a kitchen helper for McDonalds and Burger King, and as a laundry worker for Benton's Professional Cleaners. (Doc. No. 18, Pl's Brief, p. 12.) The Government does not dispute Cox's assertion.

indicates that she worked at various establishments where kitchen helpers, cleaners, and/or laundry workers are traditionally employed.  During the hearing, the ALJ merely questioned Cox about her prior work as a dump truck driver for a landscaping company and as a meat wrapper for the Elba Market.  (R. 194-95.)  The ALJ, however, did not question Cox about her extensive work history or seek additional evidence concerning her prior employment. An administrative law judge has a duty to develop a full and fair record.  *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985).  When there is a conflict, inconsistency, or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected an opinion regarding the plaintiff's capacity for work.  In this case, the ALJ failed to reconcile evidence indicating that Cox previously worked in businesses where laundry workers, kitchen helpers, and housekeepers are employed with the vocational expert's opinion that Cox is able to perform other work as a laundry worker, kitchen helper, and housekeeper.  Given these inconsistencies, this court is unable to determine whether the ALJ's finding that Cox can perform work in the national economy is supported by substantial evidence.

Consequently, this case is due to be reversed and remanded to the Commissioner.[12]


## V.  Conclusion

---

[12] The Government argues that a medical source statement which was presented for the first time as an attachment to Cox's brief should not be considered by this court because Cox has failed to demonstrate good cause for her failure to submit the new evidence at the administrative level. (Doc. No. 19, p. 13.) Given that the court has not relied on this additional information and that the case is due to be remanded, the court pretermits discussion of this issue.  The court notes that this new information may be submitted to the Commissioner on remand.

Accordingly, the court concludes that this case be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

A separate order shall accompany this opinion.

Done this 24th day of October, 2007.

      /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE